RICHARD M. ODERKIRK, RESPONDENT, *v.* JAMES C. FARGO, AS PRESIDENT OF THE AMERICAN EXPRESS COMPANY, APPELLANT.

*Negligence — a trunk left by the consignee thereof in the company's office — liability as warehouseman or gratuitous bailee — agent's authority — rule of the company — question of delivery and acceptance is for the jury — gross negligence must be proved — when a question of fact — contradicting a witness.*

A trunk belonging to one Oderkirk reached the office of an express company on Saturday. On Monday, Oderkirk found it there and said to the agent of the company that he wished to take from it some things belonging to one Smith, and to leave the trunk there to be called for by a team the next or the following day. The agent replied that if Oderkirk paid the charges he could take the things out and leave the trunk there. Oderkirk paid the charges, signed the ordinary receipt without knowing its contents, and took out the things.

Upon Wednesday he called for the trunk and was informed by the agent that he had, on Tuesday, delivered it to certain persons, who asked for it, and who, as the agent supposed, were sent by Oderkirk.

In an action by Oderkirk to recover the damages resulting from such wrongful delivery:

*Held,* that if such an arrangement was entered into between the agent and Oderkirk before the latter paid the charges and signed the receipt, it became a question for

the jury whether the relation of warehouseman was created thereby or whether the express company was liable as a gratuitous bailee. .

That such an arrangement was within the apparent scope of the agent's authority, and would bind his principal although he had no authority from it to make such an arrangement.

That a rule of the express company, instructing agents not to retain packages in their offices after the charges thereon had been paid and the goods receipted for, was not material unless it was shown that it had been communicated to Oderkirk.

That whether, upon the facts, there was a delivery to, and acceptance by, the plaintiff of the whole trunk was a question for the jury. .

That the burden of proving gross negligence is upon him who asserts it; that it may be shown by witnesses or from the circumstances.

That, for the purpose of laying a foundation to contradict a witness, it was proper to ask him whether he had not, on a former trial in a Justice's Court, testified in a certain manner, and that it was not necessary to produce the justice's minutes of the testimony.

APPEAL by James C. Fargo, as president of the American Express Company, from a judgment of the Jefferson County Court, entered in the clerk's office of said county on the 18th day of April, 1891, upon a verdict for the plaintiff for forty-three dollars and forty-eight cents and costs; and also from an order denying the defendant's motion for a new trial made upon the minutes of the court before which the action was tried.

The action was commenced in a Justice's Court, and the plaintiff had judgment. From that judgment the defendant appealed to the Jefferson County Court. Upon a retrial in the County Court the plaintiff was nonsuited. He then appealed to this court, where the judgment of the County Court was reversed and a new trial granted. The action was again tried in the County Court, and the jury found for the plaintiff.

The plaintiff, by this action, sought to recover of the defendant the value of a trunk and its contents, which had, by plaintiff's direction, been sent by express from Stony Creek, Warren county, N. Y., to Watertown, N. Y., and carried by the defendant from Rome to Watertown, and which plaintiff claimed was not delivered to him, but wrongfully delivered to some other person.

Upon the last trial, as upon the former trial, in the County Court it appeared that plaintiff's trunk reached the defendant's office at Watertown on Saturday, October 26, 1889. The following Monday, in

the forenoon, the plaintiff, who lived a short distance out of town, called at the defendant's office and there found his trunk. He testified that, on that occasion, he said to the agent of the defendant in charge of the office that he wanted to take out some things that belonged to a man by the name of Smith, and then leave the trunk there until the following day, or the next, to enable him to have it taken to his house by one of Woodruff's teams that were drawing brick, and the agent replied that, if the plaintiff paid the charges, he could take the things out and leave the trunk ; that he then paid the charges and signed in a book what was shown to have been a receipt, but he did not at the time know what he signed ; that he then opened the trunk, and some of the clothing belonging to Smith was taken out. He then locked it again and left it there. Upon Wednesday of the same week he went again to the office for his trunk, when he was informed by the agent that it had been delivered the day before to some other persons upon the supposition that the plaintiff had sent for it. The plaintiff also testified that he never authorized any one to take the trunk, and had never received it. The evidence disclosed that two men with a team called at the office, asked for the plaintiff's trunk, said the charges were paid, and that it was receipted for, and that defendant's agent then pointed out to them the trunk and they took it ; that he did not ask them for any order, or whether they had any authority from plaintiff to take it, did not know who the men were, and took no measures whatever to learn whether they were authorized to receive it.

On the trial the court submitted to the jury the question whether the arrangement between the plaintiff and defendant's agent was made before the charges were paid and the receipt signed, as testified to by the plaintiff, or afterwards, as testified to by defendant's agent, adding that, if they found with the plaintiff, they should determine whether the relation of warehouseman was thereby created. The court also submitted to the jury the question whether the defendant was guilty of gross negligence, and thus liable if the relation of the defendant was to be regarded as that of gratuitous bailee. The jury found for the plaintiff.

*Thomas F. Kearns*, for the appellant.

*E. C. Emerson*, for the respondent.

Martin, J.:

Under the evidence in this case it was a question of fact whether the transaction between the plaintiff and the defendant's agent was as testified to by the plaintiff, or as testified to by the defendant's witnesses, and was properly submitted to the jury. The verdict of the jury upon that question should be regarded as final. (*Baird* v. *Mayor, etc.*, 96 N. Y., 567; *Archer* v. *N. Y., N. H. and H. R. R. Co.*, 106 id., 589, 602.)

When this case was before this court on a former appeal, Merwin, J., who delivered the opinion of the court, said : " The property was allowed to remain at the express office for the convenience solely of the plaintiff. This, according to the doctrine laid down in *Fenner* v. *Buffalo and State Line Railroad Company* (44 N Y., 505), would relieve the defendant from liability as a common carrier. * * * It does not, however, follow that because liability as a common carrier had ceased there was no liability at all. * * * In the present case, according to the evidence of the plaintiff, the agent of the defendant, before the charges were paid and the property receipted, agreed that plaintiff might take away a portion and leave the balance, with the assurance that it would be all right. If this was so, it should not be said, as matter of law, that there was a delivery to and acceptance by the plaintiff of the whole. There was no termination of the transaction with the carrier. The custody of what was left remained as it had been before. It was in the office of the company and under control of its agent. But it is said that the agent of the company had no power to bind the company to the agreement or consent that the property be left. This seems to have been the main ground for the nonsuit. The agent testifies that he had no such authority, but he does not say that he so informed the plaintiff. If, as testified to by the plaintiff, and as might have been found by the jury, the arrangement for leaving the trunk was made before the payment of the charges and the signing of the receipt, and with a view to give the plaintiff a reasonable opportunity to send for his goods, it would be a matter within the apparent scope of the authority of the agent, managing there the business of the company, and would bind the company in the absence of any notice to the plaintiff of any restriction on the agent's authority. (*Curtis* v. *Avon,*

*G. and M. M. R. R. Co.*, 49 Barb., 148; *Isaacson* v. *N. Y. C. and H. R. R. R. Co.*, 94 N. Y., 278; Story on Agency, § 126.) At least it should not be said, as matter of law, that the company would not be liable. It follows that the nonsuit was improperly granted, and that the request of the plaintiff to go to the jury on the question of the negligence of the defendant as warehouseman should have been granted." (*Oderkirk* v. *Fargo*, 58 Hun, 347.) We regard that opinion as controlling in this case, and think the case was properly submitted to the jury. Hence the judgment and order should be affirmed, unless some of the defendant's exceptions are valid and require a reversal.

On the trial the plaintiff, on the cross-examination of the defendant's agent, who was sworn as a witness and testified that the conversation with the plaintiff about leaving the trunk was after the charges were paid and the receipt signed, asked the following question: " Will you swear you did not swear before the justice when the first trial was had, within four weeks after it occurred, that the whole talk about leaving that trunk there and the arrangement was made before the book was signed and charges paid? (Objected to by defendant as incompetent and immaterial. Overruled. Exception.)

" DEFENDANT'S COUNSEL — Give me an exception on the ground that he should read the minutes of the court below.

" The COURT — He asks him a question laying a foundation to contradict him.

" DEFENDANT'S COUNSEL — I object to it as incompetent and immaterial; and that the evidence of the justice taken in the court below should be produced, and the witness asked if he swore so and so from the minutes of the court.

" The COURT — He has a right to ask the question.

" DEFENDANT'S COUNSEL — Those are my grounds and give me an exception."

We find no error in this ruling. It is abundantly sustained by the authorities. (*Pickard* v. *Collins*, 23 Barb., 444; *Weeks* v. *Fox*, 3 T & C., 354, 357; *Grimm* v. *Hamel*, 2 Hilt., 434; *Tooker* v. *Gormer*, 2 id., 71; *Sitterly* v. *Gregg*, 90 N. Y., 687; *Chapman* v. *Brooks*, 31 id., 75; *McCabe* v. *Brayton*, 38 id., 196.) Moreover, the witness had previously testified to substantially the same fact without objection.

The defendant asked the witness Garvey, who was a route agent of the defendant company, "And have you any instructions of any kind to retain packages in the office after the charges are paid upon them, and they are receipted for by the consignees?

"Plaintiff's Counsel — I object to it as incompetent and immaterial, and no evidence of any instructions was brought to the knowledge of the plaintiff.

The Court — I hold it is immaterial unless it is followed by that, but they may ask the question. I hold, under the ruling of the General Term, it is immaterial, unless it was brought to his knowledge.

"Defendant's Counsel — I offer to show that, your honor.

"The Court — That it was brought to his knowledge.

"Defendant's Counsel — I don't know whether it was brought to Oderkirk's knowledge or not. But I offer to show that the witness, or the agent here, or any of the agents, have no right to retain any package in the office after the charges are paid, and they are receipted for upon the books.

"The Court — I decline to receive it unless you propose to show that it was communicated to the plaintiff.

"Defendant's Counsel — I except. I offer to show that broad proposition, and it is objected to upon what ground?

"Plaintiff's Counsel — As incompetent and immaterial; unless it is shown that the instructions were communicated to the plaintiff. (Objection sustained. Defendant excepts.)

"Defendant's Counsel — I offer to show by those witnesses that they have no authority whatever from the company to store any goods whatever in their offices after the charges are paid and receipted. (Objected to as before. Objection sustained. Defendant excepts)."

We do not think these exceptions were well taken. First. The evidence offered related to instructions given to the witness, and there was no offer to show that he knew what particular instructions were given to Horton. Second. It was not claimed that the instructions, if any were given, were communicated to plaintiff. This ruling seems to be in accordance with the former opinion in this case. It is there said : "If, as testified to by the plaintiff, and as might have been found by the jury, the arrangement for leaving

the trunk was made before the payment of the charges and the signing of the receipt, and with a view to give the plaintiff a reasonable opportunity to send for his goods, it would be a matter within the apparent scope of the authority of the agent, managing there the business of the company, and would bind the company in the absence of any notice to the plaintiff of any restriction on the agent's authority."

"Parties may deal with the agents of corporations upon the presumption that they possess the powers usually assigned to the office they hold, and the principal is bound, as to third persons acting in good faith, by the act of an agent within his apparent authority, although in the particular instance it was unauthorized." (*Isaacson v. N. Y. C. and H. R. R. R. Co.*, 94 N. Y., 285; Story on Agency, § 126; Smith on Mercantile Law [2d ed.], 59)

The question here was not what real authority Horton possessed, but what his apparent authority was. Hence the testimony was not material. The plaintiff could recover only in case that the arrangement with him was within the apparent authority of the agent.

Nor do we think the defendant's exception well taken to the portion of the charge where the court said: "I think it cannot be said, as a matter of law, that there was a delivery and acceptance by the plaintiff. I leave the question to the jury." This question was decided on the former appeal. It was then held that it should not be said, as a matter of law, that there was a delivery to and acceptance by the plaintiff of the whole.

It is also claimed by the appellant that the court erred in the following portion of its charge, and in refusing to charge according to the following requests:

"DEFENDANT'S COUNSEL — * * * I ask your honor to charge the jury that the burden of proving negligence rests upon the plaintiff, and the same must be shown by a preponderance of evidence.

"The COURT — Oh, yes; it is for the jury to say, under the law, whether there was negligence in this case.

"DEFENDANT'S COUNSEL — The burden is upon the part of Oderkirk to show it. I ask your honor to charge, also, if the plaintiff himself is guilty of contributory negligence in leaving the matter open as he did, that he would send a team without any order, then,

in that case, the gross negligence upon the part of the defendant would not avail the plaintiff.

" The Court — I will not charge it in that way.

" Defendant's Counsel — I except. I say that if he was guilty of contributory negligence in any way in reference to this trunk, then gross negligence upon the part of the defendant would not avail.

" The Court — If he was guilty of negligence in allowing the defendant to deliver it as he did, then no recovery can be had; otherwise I decline to charge your proposition.

" Defendant's Counsel — I except. That is, if he was cognizant of the way it was delivered.

" The Court — Yes, if he left it in such shape that they might deliver it to wrong party.

" Defendant's Counsel — In leaving it the way he did, if he was guilty of contributory negligence, then any negligence on the part of the defendant would not avail him.

" The Court — I leave that to the jury. I decline to charge otherwise.

" Defendant's Counsel — I except. I ask your honor to charge that gross negligence must be proven, and cannot be assumed.

" The Court — Oh, yes, it must be proven, but not by witnesses; it may be from the circumstances as well; but it must be proven.

" Defendant's Counsel — I except. I ask your honor to charge that there is no gross negligence upon the part of Mr. Horton or any of the employes in the delivery of this property to any person.

" The Court — I leave it to the jury under the instructions I have given.

" Defendant's Counsel — I except. I ask your honor to charge that Mr. Horton did not act for the company in the capacity of a gratuitous bailee.

" The Court — I decline to charge that.

" Defendant's Counsel — I except. I ask your honor to charge that there is no evidence that he is guilty of gross negligence.

" The Court — I decline to charge otherwise than I have.

" Defendant's Counsel — I except."

By an examination of this portion of the charge, it will be perceived that the court charged that the burden of proving negli-

426 ODERKIRK v. FARGO.

FOURTH DEPARTMENT, NOVEMBER TERM, 1891

gence rested on the plaintiff, and must be shown by a preponderance of evidence, and that gross negligence was not to be assumed, but must be proved. The court also charged that if the plaintiff was negligent in allowing the defendant to deliver, as he did, if he left it in such shape that it might be delivered to the wrong party, then no recovery could be had. This portion of the charge was as favorable to the defendant as it was entitled to. There was no proof or claim that the plaintiff was guilty of any negligence that contributed to the loss of the trunk, unless it existed in what was said by him as to sending for it. The court, in effect, charged that if he was negligent in that respect, he could not recover. This was all that the defendant could properly ask. The question whether the plaintiff was negligent, was properly submitted to the jury. It was a question of fact, and not of law.

We find no error in the refusal of the court to charge that Horton did not act for the company in the capacity of a gratuitous bailee.

Neither do we think the court erred in refusing to charge that there was no gross negligence on the part of the defendant's agent. The proof was sufficient to present a question of fact as to whether the agent was guilty of such a degree of negligence. If a jury was not justified in finding that the defendant's agent was grossly negligent in this case, it would seem that gross negligence could be established in no case unless a willful and intentional wrong had been committed. The defendant's agent was so utterly unmindful of the duty which he owed to the plaintiff to exercise at least some degree of care not to deliver this trunk to a stranger, that he omitted to exercise even the slightest care to ascertain whether the persons applying for it had any authority to receive it. He not only did not inquire as to the authority of the persons who took it, but he did not even look at them to ascertain what manner of men they were.

When the portions of the charge excepted to are considered together, and construed in connection with the remainder of the charge relating to the subject, it becomes quite manifest that the instructions of the court conveyed to the jury the correct rule of law upon the questions presented, and that the jury was not misled thereby.

No other question is raised by the appellant. We think the judgment and order should be affirmed.

MERWIN, J , concurred; HARDIN, P. J., not sitting.

Judgment and order affirmed, with costs.